

# Missouri Court of Appeals
## Southern District
### Division Two

In re the Marriage of Thomas Leon Harris )
and Melanie Berlier Harris )
)
THOMAS LEON HARRIS, )
)
    Petitioner-Appellant, )
)
vs. )     No. SD32851
)
MELANIE BERLIER HARRIS, )     Filed October 28, 2014
)
    Respondent-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Larry Luna, Associate Circuit Judge

<u>AFFIRMED</u>

Thomas Harris ("Father") appeals the trial court's judgment granting sole physical custody of the parties' minor child to Melanie Berlier Harris ("Mother"). In his first two points, Father challenges the trial court's use of the language "sole physical custody" in the judgment because he claims it is inconsistent (1) with the "joint physical custody" language contained in the parenting plan incorporated by the trial court in the judgment, and (2) with what Father characterizes as the "significant periods of custody" awarded to him in that plan. Referring to those same periods of custody in his third point, Father claims that the award of such "limited physical custody" is not supported by substantial evidence. Because Father has failed to

1

preserve any of his claims for appellate review by first raising them in the trial court, the trial court's judgment should be affirmed.[1]

## Applicable Legal Principles

"[N]o allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court." Section 512.160.1, RSMo 2000; *see also* Rule 84.13. "'An issue that was never presented to or decided by the trial court is not preserved for appellate review.'" *Brown v. Brown*, 423 S.W.3d 784, 788 (Mo. banc 2014) (quoting *State ex rel Nixon v. Am. Tobacco Co., Inc.*, 34 S.W.3d 122, 129 (Mo. banc 2000)). As required by Rule 78.09, the trial court must be given the opportunity to rule on a question.[2] *Brown*, 423 S.W.3d at 787. Adherence to this rule assists in resolving any alleged error at the earliest possible opportunity by "allowing the trial court to rule intelligently." *Id.* at 787-88. It is a critical component in the efficient and timely resolution of disputes and the conservation of the parties' and the courts' limited resources. *Id.* at 788.

Failure to make known to the court an objection to the action of the court and grounds therefor will constitute a waiver of that objection on appeal. *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 267 (Mo. banc 2014) (citing *Pollard v. Whitener*, 965 S.W.2d 281, 291 (Mo.App. 1998) and *Niederkorn v. Niederkorn*, 616 S.W.2d 529, 535 (Mo.App. 1981)). A properly preserved objection will identify the law with respect to the particular legal

---

[1] Father's counsel on appeal was not his trial counsel.

[2] Rule 78.09 provides:

> Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary *it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action that the party desires the court to take or objections to the action of the court and grounds therefor*; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party.

(Emphasis added).
Rule references are to Missouri Court Rules (2014).

claim, provide citation to authority, and apply that law to the facts of the case. *Mayes*, 430 S.W.3d at 270.

## Points 1 and 2

Father has failed to direct us to any place in the record on appeal where any of his claims in his first and second points were presented to or decided by the trial court. From our review, we have found nothing in the record where Father presented to the trial court any claimed inconsistencies between the "sole physical custody" language used by the trial court in the body of its judgment and the language or substantive provisions in the parenting plan incorporated into that judgment.[3] Points 1 and 2 are denied.

## Point 3

Similarly, Father never argued or asserted to the trial court any claimed factual or legal deficiencies in the custody provisions of the parenting plan incorporated into the judgment. At the conclusion of the trial, the trial court offered the parties an opportunity to comment on or have a further hearing upon the Guardian ad Litem's ("GAL") proposed parenting plan to be filed within a week thereafter. Father expressly waived both opportunities and affirmatively stated to the trial court that he would "rely" upon whatever the GAL submitted. After it was timely filed, the trial court adopted the GAL's parenting plan and incorporated it in its judgment

---

[3] Although Father filed a post-judgment motion to vacate, reopen, reconsider, and take additional evidence regarding the judgment, it contained no allegations related to any alleged inconsistency in the language used in the judgment and the parenting plan incorporated into it or any claim that the custody disposition in the judgment was not supported by substantial evidence. Rather, the grounds stated in this motion were that, as a result of the entry of the judgment, the minor child was distraught by the belief that he might have to move back to California and his school was concerned that this move would not be beneficial.

Whether an issue is procedurally required to be raised in a motion to amend to preserve it for appellate review, *see* Rule 78.07(c), or not, *see* Rule 78.07(b), an appellant must, nevertheless, comply with the Rule 78.09 requirement of presenting that issue to the trial court in order to preserve it for appellate review. *Brown,* 423 S.W.3d at 788 n.5. For this reason, we need not address whether Father's omission of any of his claims on appeal in his post-judgment motion may have also violated Rule 78.07(c).

3

without any changes.  Father's failure to offer any objection to the GAL's parenting plan or request an evidentiary hearing to challenge any of its provisions and his implied invitation for the trial court to rely upon it waives and precludes any appellate review of Father's claim that the custody provisions in that plan, as adopted by the trial court, are not supported by substantial evidence. *Brown*, 423 S.W.3d at 788.[4]  Point 3 should be denied.

## Decision

Having failed to preserve any of his claimed trial court errors for our appellate review, Father's appeal should be denied, and the trial court's judgment should be affirmed on that basis. *Id.* at 789.


GARY W. LYNCH, J. – Separate opinion author

NANCY STEFFEN RAHMEYER, J. – Separate opinion author

MARY W. SHEFFIELD, P.J. – Concurring opinion author

---

[4] Judge Rahmeyer's separate opinion is correct in stating that the GAL's parenting plan is "merely evidence." What that opinion fails to acknowledge, however, is that once it was properly admitted into evidence, it was substantial evidence the trial court could rely upon in supporting its judgment. By submitting that plan, without objection, the GAL's expert opinion as to the custodial arrangement in the minor child's best interest was admitted into evidence. Father's attempt to challenge that opinion on appeal as not being supported by substantial evidence is a backdoor challenge to its admissibility, in the absence of a timely objection to its logical relevance. "If a question exists as to whether the proffered opinion testimony of an expert is supported by a sufficient factual or scientific foundation, the question is one of admissibility." *Washington v. Barnes Hosp.*, 897 S.W.2d 611, 616 (Mo. banc 1995). "It must be raised by a timely objection or motion to strike. Once opinion testimony has been admitted, as any other evidence, it may be relied upon for purposes of determining the submissibility of the case." *Id.*



# Missouri Court of Appeals
## Southern District
### Division Two

In re the Marriage of Thomas Leon Harris )
and Melanie Berlier Harris )
     )
THOMAS LEON HARRIS, )
     )
     Petitioner-Appellant, )
     )
vs. )     No. SD32851
     )
MELANIE BERLIER HARRIS, )     **Filed: October 28, 2014**
     )
     Respondent-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Larry Luna, Associate Circuit Judge

## AFFIRMED

The judgment is affirmed. I agree with Judge Lynch's opinion that Point I is not preserved for appeal; however, I would reach the merits of both Points II and III. With that in mind, I will set forth the necessary factual and procedural history.

Thomas Leon Harris ("Father") appeals the trial court's judgment granting custody of the parties' minor child ("Child") to Melanie Berlier Harris ("Mother"). Father raises three points on appeal: (1) The trial court judgment erred by purporting to grant "sole physical custody" where the incorporated parenting plan provided for "joint physical custody;" (2) The amount of custody awarded was "significant" enough custody to actually be joint physical custody as a

1

matter of law; and (3) The trial court judgment awarding the "limited" periods of custody was not supported by substantial evidence.

## Factual and Procedural Background

Father and Mother had Child together in California. The parties then married in Nevada and moved to several different states as a couple before deciding to separate. Mother moved back to California with Child and Father moved to Missouri. While Child was with Mother in California, Mother allowed Father to have contact with Child and allowed Father to be as involved as he wished in Child's life. Mother and Father orally agreed that Child would visit Father in Missouri for the summer and then return to California. Father unilaterally made the decision not to allow Child to return to California during the agreed upon visit.[1] Father then filed for divorce and sole custody of Child, and denied visitation to Mother for over a year. He also refused to give any information concerning Child to Mother, and indicated to Child's school that Mother could not have school records, would not be notified in case of emergency, and was not allowed to take Child out of school. He had a policy at his home that, if Mother called, the phone was not to be answered. Father, who had a history of violence with Mother and Child, also posted violent and threatening messages about Mother on Facebook while the action was pending. Father traveled frequently and his live-in girlfriend, who "liked" all his violent messages on Facebook, cared for Child.

Mother had been the primary caretaker of Child, who had been diagnosed with autism and Tourette's syndrome and who received specialized school services. Child was with Mother's sister at the time Father picked up Child and Father made no complaint to Mother

_____

[1] Although Father testified that Child was received by him in such a condition (unclean) that to return Child to Mother would be negligence, the trial court found this decision to be an "overreaction to an isolated incident" and thus his testimony is not persuasive given our standard of review.

about Child's cleanliness at that time. He did make a hotline complaint about Mother that was not related to Child's cleanliness. Father's custody plan presented to the court requested sole legal and physical custody; although Father testified he was willing to give joint custody "a try," he continued to be hostile toward Mother. Mother also asked for sole custody of Child. The only issue at trial was the custody of Child.

A guardian ad item ("GAL") was appointed to represent Child. At the close of trial, the GAL asked to present a parenting plan; his proposed plan provided that "the parties shall share joint legal and physical custody of the child." Specifically, the plan provided that Mother would have custody of Child at all times that contact was not specifically designated to Father. The plan proposed custody to Father for spring break, summer, Father's Day, Labor Day, and alternating years for other major holidays.

The court issued an opinion letter that specified joint legal custody to both parties but sole physical custody to Mother and stated that Child was to have Mother's address for mailing and educational purposes. The court stated: If custody were to be given to Mother, Mother would be the primary caregiver due to her flexible work plans, but if custody were to be given to Father, Father's live-in girlfriend would be the default caregiver due to Father's need to travel for work. Mother would be more likely to allow Child to have meaningful contact with Father. Mother had allowed Father to visit Child, Mother had allowed Child to travel to Missouri, and Mother cooperated with Father in matters of custody. Father, however, unilaterally changed the custody agreement that the parties had orally agreed to by keeping Child beyond the set time, refused to let Mother have access to Child's school and medical information, and refused to supply Mother with Child's contact information. Father, by choosing to keep Child in Missouri and preventing Child's contact with Mother, either intentionally chose to subvert Child's best

3

interests to his (Father's) own interests or lacked proper parenting judgment. Finally, the court found that the GAL's parenting plan best reflected the interests of Child.

The court directed Mother's attorney to prepare a written judgment for submission. This judgment stated, as the trial court opinion letter indicated, that custody would be joint legal custody with sole physical custody in Mother. The judgment also incorporated by reference the GAL's proposed parenting plan which still specified *joint physical* custody. Father moved to vacate, reopen, reconsider, and take additional evidence regarding the judgment. The grounds stated in this motion were that Child was distraught by the belief that he might have to move back to California and Child's school was concerned that his move would not be beneficial. The motion was denied and this appeal followed.

## Standard of Review

At issue in this case is the appropriateness of the child custody determination rendered by the trial court. Generally, this Court must affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Additionally,

> a trial court's custody determination is afforded greater deference than other decisions. Regarding custody issues, we grant the trial court broad discretion and do not reweigh the evidence, even if the evidence may have supported another conclusion.
> . . . Thus, we consider all evidence and any reasonable inferences therefrom in the light most favorable to the judgment, disregarding contradictory evidence. If evidence does not clearly preponderate in favor of either parent, we will reverse the trial court's award only when there has been an abuse of discretion.

*Thorp v. Thorp*, 390 S.W.3d 871, 877 (Mo.App. E.D. 2013) (internal citations and quotations omitted).

4

***Point I: Whether the Trial Court Erred by Awarding "Sole Physical Custody" to Mother in the Body of the Judgment and Joint Physical Custody in the Incorporated Parenting Plan***

For his first point on appeal, Father argues that the trial court erred in the award of sole physical custody to Mother in the judgment while adopting the joint physical custody plan of the GAL. Father's argument hinges on the inconsistency between the language of the judgment which granted "sole physical custody" to Mother and the language of the incorporated parenting plan which provides for "joint physical custody." Essentially, Father argues that the trial court subjectively meant to award joint physical custody and failure to do so was a clerical error. Father did not raise this issue in a timely motion to amend the judgment, pursuant to Rule 78.07(c).[2] Where, as here, Father's argument amounts to no more than an allegation of a scrivener's error in the trial court judgment, Father contests the "language of the judgment" and Rule 78.07(c) bars our appellate review because the trial court was never presented with an opportunity to correct the alleged error.

***Point II: Whether the Point Should Be Reviewed***

For his second point on appeal, Father argues that, because the parenting plan awarded him "significant" periods of custody, his custody should be termed "joint physical custody" as a matter of law and failure to do so creates a stigma that he is a bad parent and affects the standards under which he can pursue a modification of custody. Judge Lynch's opinion refuses to address Father's claim that the amount of time awarded to him was de facto joint physical custody; his opinion cites cases for the proposition that, "Failure to make known to the court an objection to the action of the court and grounds therefor will constitute a waiver of that objection on appeal." Judge Lynch relies on ***Brown v. Brown***, 423 S.W.3d 784 (Mo. banc 2014), to support that proposition, however, the problem with that reasoning is that the line of cases cited

---

[2] All rule references are to Missouri Court Rules 2014.

by **Brown** are concerned with trial court rulings and not the judgments of the court.[3] Father's argument made it clear that he was, in part, challenging the substantive ruling that gave him seventy five days of custody. He claimed that as a matter of law that amount of time is actually joint physical custody. He cited cases in which an award of approximately that many days constituted a "joint physical custody" award. The issue presented to us is a complaint about the judgment and not a ruling. There is no question that the trial judge ordered sole physical custody to Mother and not joint legal custody. The question of custody was fully addressed by the parties, the GAL, and the trial court. Mother also responded to Father's argument in her brief. It is appropriate to address the merits of Father's argument. I do not believe there was sandbagging of the trial judge in raising this legal issue on appeal. I will address the merits.

### Point II: Whether the Trial Court Awarded Significant Periods of Custody to Father

"Joint physical custody" is defined as "an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents." Section 452.375.1(3), RSMo Cum.Supp. 2011. "'Sole physical custody' is not defined." **Loumiet v. Loumiet**, 103 S.W.3d 332, 336 (Mo.App. W.D. 2003). Designation of custody as "joint" or "sole" thus hinges on whether the amount of parenting time is "significant." **Id.** at 336-37. The initial designation of custody as being "sole" or "joint" is generally left to the determination of the trial court. **Id.** at 337. This Court has previously made determinations of "significance" when the trial court failed to do so, *see **In re Marriage of House***, 292 S.W.3d 478, 487-88 (Mo.App. S.D. 2009), but where the trial court has made an initial designation, that characterization will only be disturbed in accord with the abuse of discretion standard. **Thorp**, 390 S.W.3d at 877. "This, of course, could lead to identical

---

[3] See attached Appendix to Cases.

6

physical custodial arrangements being categorized differently from trial court to trial court, in that a period of custodial time that is significant to one court might be deemed insignificant by another." *Loumiet*, 103 S.W.3d at 337.

Here, the trial court did make a specification that custody was to be sole physical custody and thus *House* is inapplicable. Father was awarded custody during spring break, summer, Father's Day, Labor Day, and major holidays in alternating years. As we have noted, in his third point Father notes that the division of parenting time in this case is "a long way from an equal division between the parents, and a somewhat similar schedule . . . was found in *Davis v. Schmidt*, 210 S.W.3d 494, 506 (Mo.App. W.D. 2007)[,] to be so limited as to not meet the definition of joint physical custody." This amount of custody is not so great as to be "significant" as a matter of law and therefore, we find no abuse of discretion by the trial court. I would deny Point II on its merits.

### Point III: Whether the Point Should Be Reviewed

Judge Lynch's opinion claims that Point III should not be reviewed because, "Father never argued or asserted to the trial court any claimed factual or legal deficiencies in the custody provisions of the parenting plan incorporated into the judgment." The opinion makes much of the decision by Father not to comment on or have further hearing upon the GAL's proposed parenting plan. Judge Lynch's opinion states, "Father's failure to offer any objection to the GAL's parenting plan or request an evidentiary hearing to challenge any of its provisions and his implied invitation for the trial court to rely upon it waives and precludes any appellate review of Father's claim that the custody provisions in that plan, as adopted by the trial court, are not supported by substantial evidence."

The following exchanges occurred at trial:

7

THE COURT: Does the guardian have any evidence to present?

[GAL]: No evidence. Judge, I think what I would like to do is put together a parenting plan and offer it as my recommendation.

. . . .

THE COURT: All right. [GAL], do I understand that you wish to make your recommendation in the form of a -- in writing and in the form of a proposed parenting plan?

[GAL]: Yes, Your Honor.

. . . .

THE COURT: Okay. Now, since typically I would allow the parties to ask questions or inquire of the guardian after the recommendation and -- is there any thought about rescheduling this in order to do that? Or do you just -- either party want to submit response to his report in writing?

[COUNSEL FOR MOTHER]: I don't need to further examine him or submit a response. I'll rely on whatever he submits.

THE COURT: Okay. You're not requesting. [Counsel for Father], do you have any request along those lines?

[COUNSEL FOR FATHER]: No. We'll rely on the same, Your Honor.

THE COURT: All right. So both parties then are going to waive any examination of the guardian after his report; is that correct?

[COUNSEL FOR MOTHER]: Yes, Your Honor.

Although Father did indicate that he would "rely" on whatever plan was presented by the GAL, this indication does not create a waiver of Father's insufficiency of the evidence claim. A fair reading indicates it is clear that he was simply waiving cross-examination. Thus, Father's "reliance" on the GAL decision was more akin to a waiver of any objection to the trial court receiving the GAL's proposals, not a waiver of the ultimate result, which still belonged to the court. *See, e.g.*, ***J.L.W. v. D.C.W.***, 519 S.W.2d 724, 728 (Mo.App. St.L.D. 1975). Judge Lynch's opinion confuses an evidentiary ruling with a judgment and misconstrues the role of a GAL's proposal.

The proposed parenting plan set forth by the GAL is merely evidence. *See **Francka v. Francka***, 951 S.W.2d 685, 691-95 (Mo.App. S.D. 1997) (summarily disposing of argument that

8

trial court erred by not following guardian ad litem's recommendation because as the finder of fact, the court can disregard *all* the reports of the GAL), and ***Bauer v. Bauer***, 97 S.W.3d 515, 521-22 (Mo.App. W.D. 2002) (rejecting appellant's argument that trial court did not give sufficient weight to recommendation of guardian ad litem because the trial court may "reject the guardian's recommendations as necessary").

Although section 452.375.9 requires parties to submit a proposed parenting plan, it does not tie the court's hands to acceptance of any of those plans; therefore, they are advisory only. ***Cutting v. Cutting***, 39 S.W.3d 540, 542-43 (Mo.App. W.D. 2001) ("[T]he final plan ordered by the court 'shall be in the court's discretion and shall be in the best interest of the child.'") (citing section 452.375.9). *See also* ***In re Marriage of Chorum***, 959 S.W.2d 900, 903 (Mo.App. S.D. 1997); ***Jones v. Jones***, 903 S.W.2d 277, 281 (Mo.App. W.D. 1995). The GAL is simply the legal representative of the child at the hearing. ***Mund v. Mund***, 7 S.W.3d 401, 406 (Mo. banc 1999). Their presence merely lends the court a perspective that is unhampered by ex parte restrictions and tainted parochial interests so that the trial court can render a decision that is truly in the best interests of the child. ***State ex rel. Bird v. Weinstock***, 864 S.W.2d 376, 384-85 (Mo.App. E.D. 1993). A GAL is not required to make a recommendation. ***Guier v. Guier***, 918 S.W.2d 940, 951-52 (Mo.App. W.D. 1996). Where the GAL does make a recommendation, the trial court is not bound by that opinion. ***Id.*** The trial court has *sole* responsibility for determining custody. ***Francka***, 951 S.W.2d at 695. The parties did not have an obligation to cross-examine any witness and certainly not the GAL.

The substance of Father's point and argument is that substantial evidence does not support the decision awarding greater custody to Mother than Father and the best interests of Child require more extensive custody in Father. Unlike Father's Point I, no rule requires a formal

9

motion on this issue and the issue was extensively presented to the trial court. This is not a "particular, specific" claim of error arising for the first time on appeal. *Hawkins v. Hawkins*, 462 S.W.2d 818, 824 (Mo.App. Spfld.D. 1970). Rather, it is a "broad contention" concerning custody in general. *Del Monte Corp. v. Stark & Son Wholesale, Inc.*, 474 S.W.2d 854, 856 (Mo.App. Spfld.D. 1971). The trial court was on notice that Father sought sole physical custody because Father and Mother both asked for sole physical custody in their proposed parenting plans.

Further support that this claim should be reviewed can be found in our statutes, particularly section 510.310.4, which provides: "The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court." The rule set forth in section 510.310 has been reiterated by numerous courts. *See Hawkins v. Hawkins*, 462 S.W.2d 818, 824-25 (Mo.App. Spfld.D. 1970) ("This is a court-tried case, and of course a motion for new trial is not essential to all appellate review. . . ."); *ABCO Assisting Bldg. Const. Office, Inc. v. Bagley & Co.*, 304 S.W.2d 43, 47 (Mo.App. St.L.D. 1957); and *State ex rel. Morton v. Cave*, 220 S.W.2d 45, 49 (Mo. banc 1949). The best reiteration is found in *Glassburner v. Burtrum*, 418 S.W.2d 119 (Mo. 1967):

> It is a rule of equity, as well as in actions at law, that the filing of a motion for a new trial is a mandatory prerequisite in order to preserve for review allegations of error. Civil Rule 79.03; Adams v. Richardson, Mo.Sup., 337 S.W.2d 911. There are, however, exceptions to this rule, and this case comes within one of time. One exception is that notwithstanding no motion for a new trial has been filed the appellate court may consider the sufficiency of the evidence to support the judgment, in cases tried as provided by Civil Rule 73.01 (without a jury).

*Id.* at 121.

Rule 73.01 does not specifically exempt a claim based on the sufficiency of the evidence as section 510.310 does. It does, however, state that: "Except as provided in Rule 78.07(c), a

10

party may, but need not, file a motion for new trial or a motion to amend the judgment or opinion, or both, as provided by Rule 78.04." Rule 73.01(d). Rule 78.07(c) states: "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review."

A sufficiency of the evidence claim does not relate to the form or language of a judgment but rather to the judgment as a whole and therefore does not fall under the exception in rule 73.01. I disagree that challenging the sufficiency of the evidence is a backdoor challenge to its admissibility. Evidence may be admitted and admissible but still not constitute substantial evidence.[4] In this case, the GAL report, combined with the testimony of the parties, does constitute substantial evidence to support the judgment. Here, the record reflects that the trial court did make the final decision. The GAL simply offered a parenting plan that the trial court then modified in its opinion letter based on all the evidence presented at the hearing. In doing so, the trial court drew its own independent conclusions regarding each parent's ability to be the primary caregiver, each parent's likelihood of allowing the other parent to have meaningful contact with Child, and whether Father had proper parenting judgment. Because the trial court made these very specific custody determinations, Father should not be required to make a motion asking the trial court to reconsider its substantive ruling. Accordingly, Father's point and argument that there is insufficient evidence to support the judgment is reviewable. I believe it is necessary to review the substantive claims of Father.

---

[4] As an example, if the GAL had sent in a recommendation that neither parent be awarded custody, that perhaps his Cousin Vinny would be a better custodian, would we still say that substantial evidence supports that proposal because a GAL recommended it? Of course not. The GAL is just making a recommendation, it has no more weight than any other witness. The court may totally disregard such a recommendation even if both parties waived cross-examination of the proposal.

11

### *Point III: Whether the Judgment is Supported by Substantial Evidence*

Because the trial court's judgment is presumed valid, Father carries the burden on appeal to demonstrate its incorrectness by showing the lack of substantial evidence. ***Houston v. Crider***, 317 S.W.3d 178, 186 (Mo.App. S.D. 2010).

> Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case. We view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's superior position to make credibility determinations. Due to that superior position, a trial court is free to believe or disbelieve all, part, or none of the testimony of any witness. Thus, any citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence. Such contrary facts and inferences provide no assistance to this Court in determining whether the evidence and inferences favorable to the challenged proposition have probative force upon it, and are, therefore, evidence from which the trier of fact can reasonably decide that the proposition is true.

*Id.* (internal citations and quotations omitted).

A successful lack-of-substantial-evidence challenge requires the completion of three sequential steps. *Id.* at 187. First, the proponent must identify a challenged factual proposition, the existence of which is necessary to sustain the judgment. *Id.* Second, the proponent must identify all of the favorable evidence in the record supporting the existence of that proposition. *Id.* Finally, the proponent must demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition. *Id.* Father's argument is structured around practical considerations such as the distance between Father and Child, public policy to award meaningful contact, Child's exemplary performance in his current school, and Father's qualifications in general to be a decent parent. These "contrary facts and inferences provide no assistance to this Court in

determining whether the evidence and inferences favorable to the challenged proposition have probative force upon it" and thus are irrelevant. *Id.* at 186.

Father supports his argument that custody is so "limited" as to be unsupported by substantial evidence by referencing only the following adverse findings of the trial court: (1) Father refused to return Child to Mother; (2) Father travels due to employment; and (3) Father overreacted to the incident of uncleanliness prompting him to keep Child in Missouri. Father seems to be under the mistaken assumption that substantial evidence is limited to findings of fact by the trial court. This is not so. Substantial evidence is, as stated above, *any* evidence that has probative force upon the judgment and the reasonable inferences drawn therefrom. *Id.*

Here, Father's minimalist approach to identifying substantial evidence ignores testimony at trial that indicated that Father made threatening comments regarding Mother.[5] Similarly, Father fails to mention that Father made concerning comments about his personal life and views.[6] Nor does Father acknowledge testimony that Mother successfully managed Child's

---

[5] Examples of such comments include: "Personally, I intend to make my ex's life a living hell, so that she will wish she were dead for the next 11 years. Then when she's begging for mercy, I'll twist the knife a little to the left, then a little to the right. Then I'll stab her in the eye with a soldering iron, metaphorically speaking, of course." "Dear God, Please take the life of my soon-to-be ex. If you can't, then I guess I'll solicit your competition. Have a nice day." "My advice, never, ever underestimate the potential of a father backed into a corner, and never, ever fuck with a person with a rogue mentality. Merry Christmas, bitch. Ho, ho, ho." "Don't underestimate me. Just because I'm quiet doesn't mean I forgave you. It just means that I'm still planning what I'm gonna do to you." There was some testimony at trial that these "comments" made through Father's Facebook account were perhaps not authored by Father but rather a product of "Status Shuffle." Nevertheless, this Court views the evidence in the light most favorable to the non-moving party.

[6] "I'm going to write a book how to kidnap a child legally, and promote it to bad parents, psychopaths, abusers, drug addicts, and sex offenders." "Woke to the thought everyone has one good felony murder in them. It's how and when you choose to use it, not if." "There are days when 25 to life would be so worth it." "I want to learn CPR so when someone pisses me off I can choke the life out of them, bring them back to life, and then do it all over again." "Let the bodies hit the floor." "You know, I think I weld better on Vicodin and whiskey. I'll let you know."

13

unique education requirements[7] while Child was in California and during the marriage. In doing so, Mother maintained open channels of communication whereas Father refused to allow Mother access to information such as a good phone number to reach Child and addresses where Child would be staying. Mother was responsible for Child's healthcare during the marriage and kept abreast of Child's medical conditions whereas Father was skeptical regarding Child's diagnoses. Father never even sought a treating physician for Child's disabilities for the duration of Child's stay in Missouri. Father asked that the precise custody award that was granted to Mother be made with him as the sole physical custodian. Finally, the trial court heard testimony that Father was prone to bouts of anger.[8]

By failing to identify the above information, Father fails the second requirement set forth in *Houston*. There is ample evidence to support the court's custody judgment regarding custody. Point III is also denied.

Nancy Steffen Rahmeyer, J. – Separate Opinion Author

---

[7] Child has been diagnosed with autism, Asperger's syndrome, and Tourette's syndrome. His medical conditions require "social and functioning" programs to manage his sensory processing issues. Mother also pursued therapies and intervention for Child to help Child remember to eat and go to the bathroom.

[8] Father would often destroy his possessions while angry and upset. Father would become so depressed that he said he was suicidal or so angry that he would say he could build a bomb that would blow up the entire world because no one deserved to live. Father locked Mother out of the home while they were married. Father would yell and scream at Child.

**Appendix to Cases**

**SD32851 Separate Opinion of Judge Rahmeyer**

In *Brown v. Brown*, the Supreme Court of Missouri stated: "Father also failed to raise with the trial court his claim that there was not substantial evidence of the amount of Ms. Hendrix's fees and, thereby, failed to preserve it for appellate review." 423 S.W.3d 784, 785 (Mo. banc 2014). This statement, standing alone, would seem to indicate that a not-supported-by-substantial-evidence argument must always be made at the trial court level in order to be preserved for appellate review. Such an interpretation would be in direct contradiction with the statutory rule that: "The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court." Section 510.310, RSMo 2000. The distinction between these competing statements is found in the caselaw supporting the decision in *Brown*. This appendix details the chronology of that caselaw.

<u>**Brown v. Brown**</u>

In determining whether the issues in *Brown* were preserved for appellate review, the Supreme Court relied on three separate lines of cases. The first line of cases articulates the rationale for finding that an issue is not preserved for appellate review, namely that appeals are expensive and cause delays so all issues should be raised below in order to preserve time and resources. *Brown*, 423 S.W.3d at 788. This rationale was articulated in *Pollard v. Whitener*, 965 S.W.2d 281, 288 (Mo.App. W.D. 1998). In *Pollard*, the Western District of this Court considered the sufficiency of an *objection*, not an entire judgment. *Id.* The distinction is important for several reasons. An objection to a specific evidentiary matter is something more easily fixed at trial. Furthermore, an

1

objection to a specific evidentiary matter is a smaller issue as compared to a larger judgment and, thus, the costs of an entire appeal are comparatively greater.

Second, *Brown* relied on *State ex rel Nixon v. American Tobacco Company*, 34 S.W.3d 122, 129 (Mo. banc 2000), to support its conclusion that the issue was not preserved. *Am. Tobacco Co.* also did not concern the sufficiency of the evidence. Rather, a party argued for the first time on appeal that there was an unconditional right to intervene. *Id. Am. Tobacco Co.* relied on *Zundel v. Bommarito*. In *Zundel*, a party contested the existence of a partnership for the first time on appeal. 778 S.W.2d 954, 957 (Mo.App. E.D. 1989). The court stated that the claim must fail because a trial court cannot be found in error on a matter that it never decided. *Id. Zundel* relied on *ASARCO Incorporated v. McNeill*, 750 S.W.2d 122, 129 (Mo.App. S.D. 1988); *Ozark Mountain Timber Products Inc. v. Redus*, 725 S.W.2d 640, 645 (Mo.App. S.D. 1987); and *Rietsch v. T.W.H. Company Inc.*, 702 S.W.2d 108, 112 (Mo.App. S.D. 1985).

*Rietsch* held that under Rule 73.01, a party did not preserve his claim that a statute was so vague as to be unenforceable. *Rietsch*, 702 S.W.2d at 112. Again, the court used the rationale that a trial court does not commit error on an issue that it never decided. *ASARCO* also did not concern the sufficiency of the evidence. *ASARCO*, 750 S.W.2d at 129. Both *Rietsch* and *ASARCO* were based on *Lincoln Credit Co. v. Peach*. In *Peach*, appellants raised for the first time on appeal the unconstitutional vagueness of a statute and it was not preserved for appellate review because, again, a court does not commit error regarding an issue that it never decided. 636 S.W.2d 31, 36 (Mo. banc 1982). *Peach* relied on *Alexander v. Hayden*, 2 Mo. 211 (1830), which stated that:

> The sufficiency of the *affidavit* will not be considered, because the law is, that the Supreme Court shall not consider any matter as error, other than

that expressly decided on by the court below. Nothing appears by the record which shows that there was any decision made by the Circuit Court on the sufficiency of the *affidavit*. It does not appear that the attention of that court was ever called to that point. It is the business of the plaintiff to see that his affidavit is sufficient, for in exparte proceedings the plaintiff in every step he takes, acts at his own peril, and the court will only watch over the proceedings with common care, and not like hired counsel would.

*Id*. at 212 (emphasis added). *Alexander* is the seminal case. Essentially, this second line of cases revolves around the single premise that a trial court cannot be found to have erred where it was never even given an opportunity to err. This premise would indicate that a question of the sufficiency of the evidence pertaining to the entire judgment would be preserved, where a matter of a specific allegation of error would not, because the trial court would have necessarily been presented with an opportunity to err regarding the entire judgment.

The final string of cases relied on by *Brown* is *In re S.R.J., Jr.*, 250 S.W.3d 402, 405 (Mo.App. E.D. 2008), and *In re the Adoption of J.A.D.*, 417 S.W.3d 327, 328 (Mo.App. S.D. 2013).

*S.R.J.* concerned a claim that the trial judge erred because the court did not order an investigation and social study. The appellate court found that it was not preserved based on *Niederkorn v. Niederkorn*, 616 S.W.2d 529, 535 (Mo.App. E.D. 1981), because appellate courts review for error and there can be no review where there has been no error. *Niederkorn* concerned a failure to object to the appointment of a guardian and relied on *Associated Underwriters, Inc. v. Mercantile Trust Co.*, 576 S.W.2d 343, 346 (Mo.App. St.L.D. 1978) (no specific objection made to jury instruction); *Federal Deposit Insurance Corp. v. Crismon*, 513 S.W.2d 305, 307 (Mo.1974) (no objection to balance due on note presented below); and *J. L. W. v. D. C. W.*, 519 S.W.2d 724, 728 (Mo.App.

3

St.L.D. 1975) (objection to evidence received by stipulation of parties is not preserved for appellate review).

*J.A.D.* concerned an argument raised for the first time on appeal that the trial court had failed to provide appellant with a dispositional hearing as required by statute. *J.A.D.* relied on **Roberson v. Weston**, 255 S.W.3d 15, 19 (Mo.App. S.D. 2008) (argument made for the first time on appeal that questions regarding insurance were improper); **Robbins v. Robbins**, 328 S.W.2d 552, 555 (Mo. banc 1959) (argument raised for first time that instruction regarding contributory negligence was prejudicially erroneous); and **In re Adoption of C.M.B.R.**, 332 S.W.3d 793, 808 (Mo. banc 2011) (appellant did not timely contest the lack of investigation and filing of reports, the lack of notice of the transfer-of-custody hearing, or the allegedly improper transfer of custody). Essentially this line of cases considers whether the argument presented on appeal is of a new or novel nature such that the trial court would be taken by surprise.

In summary, none of the cases relied on in **Brown** and none of the supporting cases concerned the sufficiency of the evidence to support the entire judgment. No court thus far has interpreted **Brown** to require preservation of a broad contention regarding the sufficiency of the evidence. *See* **Ferkel v. Ferkel**, 434 S.W.3d 108, 109 (Mo.App. E.D. 2014); **In re Estate of L.G.T.**, No. SD32692, 2014 WL 1779248 (Mo. App. S.D. May 5, 2014); and **State v. Stone**, 430 S.W.3d 288 (Mo.App. S.D. 2014).



# Missouri Court of Appeals

### Southern District

### Division Two

In re the Marriage of Thomas Leon )
Harris and Melanie Berlier Harris, )
 )
THOMAS LEON HARRIS, )
 )
    Petitioner-Appellant, )
 )
vs. )     No. SD32851
 )
MELANIE BERLIER HARRIS, )     **Filed: October 28, 2014**
 )
    Respondent-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Larry Luna, Associate Circuit Judge

### CONCURRING OPINION

    I concur in the result reached by my colleagues. I write separately to indicate that I reach that conclusion for different reasons. With respect to Point I and Point II, I concur in the well-reasoned opinion of Judge Lynch. With respect to Point III, I concur in the well-reasoned opinion of Judge Rahmeyer.


MARY W. SHEFFIELD - CONCURRING OPINION AUTHOR

1